[No. 88. Decided January 23, 1891.]

J. H. McGRAW v. CARRIE FRANKLIN.

STATUTE OF FRAUDS—REPLEVIN—FRAUD—EVIDENCE—VERDICT.

A promise to pay the note of another at maturity need not be in writing where the promise is made directly to the maker of the note and in consideration of its execution.

Goods recently sold to plaintiff were attached by a creditor of her vendor, and in consideration of plaintiff's giving her note and a mortgage on the goods for the debt, the vendor promised to pay the note at its maturity. The note and mortgage were assigned by the payee to the vendor's brother, who foreclosed the mortgage. In replevin against the sheriff in possession of the goods under the foreclosure proceedings, plaintiff alleged that the vendor in fact paid the note, but instead of discharging the mortgage he fraudulently procured its transfer to his brother. It was shown that the brother had no money with which to buy the note, and it was conflicting as to whether the money with which the note was purchased was furnished him by the vendor or another person. *Held*, That a judgment for plaintiff would not be disturbed.

Where, in the cross-examination of a witness, the defendant brings out the fact that the brother had stated he was to get money from an old school-mate, it is not error for the plaintiff to show, on the failure of the brother to testify at the second trial of the cause without any excuse shown therefor, that on a former trial the brother had stated he received money with which to purchase the note and mortgage from a certain person who was understood by the parties

2—2 WASH.

at the trial to be the old school-mate referred to, and then introduce the latter's deposition to contradict him.

In an action against a sheriff for conversion of goods, where plaintiff testified that she gave $785 for certain goods, depending largely on the vendor's word as to their value, and another witness testified that the goods were worth about $800, while the defendant testified that he obtained $378.40, the best price possible for the goods at sheriff's sale, a verdict for $975, including interest from time of conversion, will not be set aside as excessive.

Where it appears that the verdict in an action of replevin was for damages only, it is sufficient without being in the alternative for a return of the property or for the value thereof in case a delivery cannot be had, when the point was not raised in the court below.

(Anders, C. J., and Hoyt, J., dissent.)

*Appeal from Superior Court, King County.*

The facts are fully stated in the opinion.

*Preston, Carr & Preston,* and *W. S. Bush,* for appellant.

*Richard Osborn,* for appellee.

The opinion of the court was delivered by

Scott, J.—This was an action to recover possession of a certain stock of merchandise, or its value, brought by appellee against appellant in March, 1885. Appellee alleged in her amended complaint that she was the owner of the goods, and in the possession thereof; gave a detailed list of them with the value of each item, and stated the aggregate value to have been $800; averred a wrongful taking by appellant, and claimed damages in the sum of $800 for the detention. The complaint also contained a separate cause of action asking for damages occasioned by the suspension of her business. No proof was introduced in support of this, however, and it appears to have been abandoned upon the trial of the cause. The defendant denied that plaintiff owned the goods, and denied that they were of any greater value than a sum set opposite each

item, amounting, in the aggregate, to $378.40, and denied that plaintiff was damaged. A further defense was set up in the answer that the plaintiff gave a chattel mortgage upon said goods in August, 1884, to E. P. Ferry to secure the payment of a note for $526, executed to him by plaintiff at said time, which became due November 10th, following; that plaintiff failed to pay the note, and on March 12, 1885, said Ferry sold the note and assigned the mortgage to one Andrew Merchant, who instituted a statutory foreclosure thereof by notice and sale in the name of the assignor; that the defendant was the sheriff of King county, and took possession of the goods and held them by virtue of said proceedings. Plaintiff, in her reply, admitted giving the note and mortgage, but alleged that the same were given for the benefit of one Robert Merchant and one W. A. Stewart, who were partners doing business under the firm name of R. Merchant & Co., as an accommodation to them, for which the plaintiff received no consideration. That said merchant also agreed to pay the note before its maturity, and did pay the same in March, 1885, before the institution of said foreclosure proceedings; but that, for the purpose of defrauding the plaintiff, the said Robert Merchant, W. A. Stewart and Andrew Merchant conspired together, and, instead of causing the mortgage to be discharged, procured it and the note to be assigned to said Andrew Merchant, of which fraud the defendant had due notice. The parties proceeded to a trial of the issues as thus formed, without objection. Plaintiff recovered a verdict for $968.75, which, however, upon a motion therefor by defendant, was set aside. At a subsequent trial in April last plaintiff obtained a verdict and judgment for $975, from which this appeal was taken.

Appellant contends that the court erred in permitting proof that Robert Merchant agreed to pay the note and mortgage given by plaintiff to Ferry, on the ground that

it was a promise to pay the debt of another, and not being in writing was void; that the verdict is not sustained by the evidence, in this, that the amount of the verdict is largely in excess of any proof of the value of the goods; that there was no proof of the payment of plaintiff's note by Robert Merchant, or of any fraud; and that the court erred in permitting evidence as to a statement made by Andrew Merchant, and allowing the same to be contradicted by the deposition of the witness Fenton. He also alleges the verdict to be erroneous because it is not in the alternative form. Some minor grounds of error were alleged, which were either not saved by the record or are not considered of sufficient importance by the court to discuss.

In order to review the grounds stated it will be necessary to go into the evidence to some extent. The proof shows that in the summer of 1884 Robert Merchant and W. A. Stewart were engaged in a confectionary business as partners, under the firm name of R. Merchant & Co.; that during said summer they borrowed of the plaintiff $775, and gave her a chattel mortgage upon the goods in question to secure the payment thereof; that they subsequently conveyed the goods to her in payment of said note; that soon thereafter a suit in attachment was brought against said R. Merchant & Co. by other parties, and the goods so conveyed by them were attached in said action. Against the objection of appellant, testimony was introduced by plaintiff to the effect that Robert Merchant made her a parol promise that if she would settle the claim for which R. Merchant & Co. had been sued by giving her note for the amount to said Ferry, with a chattel mortgage upon said goods to secure its payment, he would pay the note at or before its maturity; and that she gave the note and mortgage and settled said suit accordingly. That she supposed the property was attached because they thought she

had no right to it. It is the opinion of the court that it is not necessary such a promise should be in writing, it having been made to the plaintiff direct; that the promise was valid and binding as between the plaintiff and said Merchant.

As to the proof of value, plaintiff testified that she furnished the list of items and the amount thereof contained in the complaint; that she paid $775 for the goods; that they were not worth any more than that, and that the list set forth in the complaint was a correct list of the property with the value of each article; that she paid $10 additional for the counter. Upon cross-examination she admitted that she had no knowledge of the value of some of the articles, and that her knowledge as to the value of any of them was very slight; that she took Robert Merchant's word largely as to the values at the time she bought the goods, and had to do so, the way she was situated, as it was the only way she had to get pay for the amount she had loaned thereon. David Franklin, plaintiff's husband, testified that he knew the property, and made out a list of it, which Mr. Osborn wrote; that he (witness) furnished the list and amounts; that he put the property in at a fair estimation; that the total valuation was in the neighborhood of $800; and that the property was worth about that amount. Upon cross-examination he testified that they had never been in the candy business before, and that he had never bought or sold any candy machinery. The only other proof in relation to value was introduced by defendant, who testified that he obtained the best prices possible for the goods at a sheriff's sale, and that they brought $378.40. If the plaintiff was entitled to recover the value of the goods she could also recover interest thereon from the time of the conversion, there having been no proof of any special damage; and the evidence as to value was sufficient to sustain the verdict found.

The point raised as to the failure of the proof to show any fraud, or payment of plaintiff's note by Robert Merchant, and as to the proof of the statement made by Andrew Merchant, will be considered together.    The plaintiff testified Robert Merchant told her, if she would give her note and mortgage to Ferry to pay the claim for which R. Merchant & Co. had been sued, that he would go over in Oregon and raise the money, pay off the mortgage, and take the business back; that he owned land in Oregon; that he thereafter went to Oregon, and said he would borrow the money of his mother; that Andrew Merchant was poor, and was working around by day's work; that he did not have any money to pay board or room rent, and did not have any money with which he could buy plaintiff's note and mortgage; that he lived with his family in the back end of her store-room; and that after the sale of the property by the sheriff, Robert Merchant took it and went on with the business as before, under the firm name of R. Merchant & Co.

David Franklin testified that when the property was attached in the suit against R. Merchant & Co., he said to Robert Merchant: "'How is this?   You claimed, when you got that money and gave the bill of sale, that there were no debts against the place.   What are you going to do about it?'   And that Robert Merchant said: 'We will make that all right.'   I said: 'We got this property in good faith, knowing nothing of any indebtedness;' and he said, 'I told you there was nothing against the place, and, if you will settle, I will go over to Oregon.   I have some property there, and can get the money, and pay it before it is due, if you will settle in that way.'"   That Andrew Merchant told him he was not making money enough to keep himself and pay for his children's board during the winter of 1884 and 1885; that he was hard up and had no money, and that Robert Merchant furnished him some

money for his support; that prior to the taking of the property under the foreclosure proceedings, Andrew Merchant brought suit against R. Merchant & Co. upon a claim originally due to a firm in Chicago from R. Merchant & Co., which he claimed to have paid for them; and that the defendant also attached said property in said suit; and after its sale under the foreclosure proceedings, Robert Merchant took it and went into business again under the firm name of R. Merchant & Co.; that Robert Merchant did most of the buying at the sale. Witness knew that, because he stood by and heard Robert Merchant tell Andrew Merchant what to bid for the property; that Robert and Andrew Merchant were there together most of the time; and that Andrew Merchant, after the sale, went off to carpenter's work again.

Upon cross-examination some of the questions asked by appellant's counsel, and answers made thereto by the witness, were substantially as follows:

"Q. Explain to the jury in what way you obtained your knowledge which enables you to swear positively that Robert Merchant bought this mortgage of Ferry. A. My knowledge came right from the court, from Oregon, where he mortgaged his farm for $1,300, and came right over here with that money.

"Q. Does that show you that Robert Merchant bought this mortgage? A. It showed me that he gave it to his brother, Andrew Merchant.

"Q. How do you know that he gave it to his brother? A. Because his brother had no money.

"Q. How do you know that? A. He told me so.

"Q. Did not he tell you that he was going to get money from an old school-mate? A. Yes, sir."

Witness admitted that he drew his conclusions, largely, from these matters.

J. H. McGraw, the defendant, testified that the property was demanded of him by the plaintiff before the sale, and that the plaintiff told him the mortgage had as matter of

fact been paid, and that the attempt to foreclose it was a fraud between Robert and Andrew Merchant; that he levied the attachment in favor of Andrew Merchant against R. Merchant upon the property, but did not remember whether he first seized it under that writ or under the foreclosure notice; but that he sold it under the foreclosure proceedings, and that the proceeds were not sufficient to pay the note.

Charles Brown testified that Robert Merchant told him he went to Oregon, mortgaged his farm for $1,300, and sent the money to his brother, Andrew, to buy the business up for him, as he could not buy it very well himself.

David Franklin was recalled, and the following questions by plaintiff's counsel were asked, objections made thereto by defendant's counsel, and questions answered by the witness:

"Q. Did you hear Andrew Merchant testify upon a former trial of this cause? A. Yes, sir.

"Q. What did he swear then as to where he got this money?"

Defendant's counsel objected to any testimony by witness detailing any testimony given at the former trial. Plaintiff's counsel said they got out of this witness on cross-examination that Andrew Merchant said that he was going to get some money from an old school-mate; to which defendant's counsel replied: "Mr. Franklin stated that in answer to one of your questions; I questioned him further about it on cross-examination." (This is not sustained by the record. It does not appear that such a question was asked by plaintiff or such previous testimony given by the witness.) Plaintiff's counsel then said he wished to prove Andrew Merchant stated that he got $600 from Mr. Fenton. The objection was overruled, and exception taken.

"A. He swore that he got the money from W. D. Fenton, of Oregon; that he sent him that much money that he bought the mortgage with."

The deposition of W. D. Fenton was then offered in evidence by plaintiff, the same having been taken at McMinnville, Oregon, March 6, 1888. The defendant objected to it as being incompetent, irrelevant and immaterial. The objections were overruled, exception taken and the deposition admitted, wherein the witness testified that he had never sent Andrew Merchant any money. Appellant now objects to the deposition upon the ground that it was taken under an illegal notice, but as the record fails to show that any objection was made to the notice in the court below, it will not be considered here; and the objections that were made are not tenable. Robert and Andrew Merchant were not either of them called to testify upon this last trial. From the testimony hereinbefore mentioned we think there is sufficient evidence of fraud upon the part of Robert and Andrew Merchant, and of the payment, in effect at least, of plaintiff's note and mortgage by Robert Merchant, to sustain the verdict upon that ground. No question was raised as to the trial of these matters in an action at law. As to the proof of the statements of Andrew Merchant, the old school-mate, of whom he said he expected to get money, seems to have been understood by the parties at the trial as being Mr. Fenton, of whom he subsequently said he did get it. This inference is strengthened somewhat by Fenton's testimony that he had known Andrew Merchant for fifteen years. It is reasonably apparent from the proceedings that the two statements related to the same thing, first contemplated, and subsequently claimed to have taken place. In this view, there certainly was no error appellant could take advantage of, for in his cross-examination of Mr. Franklin he sought to and did prove the prior statement relating to the ability of said Andrew Merchant to obtain money. This testimony was clearly inadmissible, as such a statement of an interested party in his own favor could not be proven, had it been objected to on that ground.

Having drawn out the testimony, appellant could not complain if the plaintiff was allowed to rebut it by showing that said Merchant failed to get the money of the person of whom he said he could get it. But we think the proof was also admissible as tending to prove the fraud which plaintiff claimed said Merchants were seeking to perpetrate. Appellant made no offer to have Andrew Merchant sworn as a witness upon the second trial, nor was it claimed that he was absent, or that his testimony was not obtainable. The fact that he testified, as he did at the first trial upon a material point, which was contradicted by the deposition of Mr. Fenton, taken before the second trial, with his failure to testify at the second trial without any excuse or reason having been shown therefor, were circumstances entitled to some weight, and were properly admitted in evidence.

As to the last ground of error alleged, the form of the verdict is as follows: "We, the jury in the case wherein Carrie Franklin is plaintiff, and John H. McGraw is defendant, do find for the plaintiff, and assess her damage at nine hundred and seventy-five dollars. — THOS. W. PROSCH, *Foreman.*" In his nineteenth instruction to the jury, the court said: "I have prepared a blank verdict which you may substantially follow:

"'We, the jury in the case wherein Carrie Franklin is plaintiff, and J. H. McGraw is defendant, do find · for the ————, and assess her damages at ———— dollars.
"'————————,
"'*Foreman.*'"

And in his twentieth instruction the court said: "If your finding is in favor of the plaintiff, you will insert in the first blank the word 'plaintiff,' and assess her damage at ———— dollars, and insert in the second blank the amount which you find in her favor. The blank over the word 'foreman' should be filled by the signature of your fore-

man. If you find a verdict in favor of the defendant, in the first blank you will insert the word 'defendant,' and erase the words 'and assess her damage at ———;' draw a line through them, and your foreman can sign it." The defendant excepted to the form of the verdict "for the reason that it requires the jury, in case that they find for the defendant, to erase a part of the form given. The form given tends to give the idea that the court meant to say that the verdict should be for the plaintiff." It is now objected to because it was not in the alternative for a return of the property, or for the value thereof in case a delivery could not be had. The proof showed that, while the property had been largely sold to Andrew Merchant, some of it had been sold to other parties; that Robert Merchant took what Andrew Merchant bought, and went into the business again; and it is fair to infer that the property itself could not have been returned, and that it was so contemplated at the trial. But, in any event, counsel should not be allowed here to urge this as error without having raised the point in the court below. No proof was offered as to any damages for the detention of the goods, nor was the jury instructed to find upon this point. It is apparent the verdict was for the value of the property, and it was sufficient in form against the objection there made. The judgment is affirmed.

STILES and DUNBAR, JJ., concur.

ANDERS, C. J. (*dissenting*). — I am unable to concur in the conclusion reached by the majority of my brothers in this case. The plaintiff in the court below, being the owner of certain personal property, which she had previously mortgaged, sought to recover the possession, or the value thereof, from the defendant, who was sheriff of King county, and who had taken said property into custody by virtue of a statutory foreclosure proceeding instituted by the assignee

of the mortgagee. The note secured by the mortgage was overdue, and both it and the mortgage were in the possession of Andrew Merchant, to whom they had been transferred by the original mortgagee for value. No steps were taken in the pending proceedings, in accordance with the provisions of the statute or otherwise, to contest the right to foreclosure or the amount due; but instead of this, action was brought to recover the property then in the custody of the sheriff and of the law by reason of the default of the plaintiff herself. It is true the testimony of the defendant shows that, before the sale of the goods under the foreclosure proceedings, he was told by the plaintiff's attorney that, as matter of fact, the note had been paid, and that the attempt to foreclose was a fraud between Robert and Andrew Merchant. But, under the circumstances, he was not bound to relinquish the property on a mere statement of that character, nor, indeed, would he have been justified, as an officer charged with the performance of an official duty, in so doing. It is disclosed by the record that the foreclosure and sale were substantially in conformity to the statute, and the sheriff should not be held responsible in the action for the goods sold by him, unless it be shown that his acts were wrongful and unauthorized by law. The action was tried and judgment rendered against the defendant in the lower court, on the theory that the note and mortgage of Mrs. Franklin had been paid, and that, therefore, the defendant had become a trespasser by seizing and disposing of the goods in question. But I am strongly of the opinion that all the testimony upon that point, taken together, fails to show more than that Robert Merchant promised Mrs. Franklin to pay her note before maturity, and that he failed to do so; and it requires no argument to demonstrate the proposition that a promise to pay is not payment, either in fact or in law. It also seems to me that all the testimony concerning the alleged fraudulent transactions between the

Merchants and the agreement made by Robert Merchant with Mrs. Franklin to pay the note was wholly irrelevant, and should have been excluded by the court. Nor do I think the defendant waived any of his legal rights by going to trial, without objection, upon the pleadings, as made up by the parties to the action. The question of conspiracy between the Merchants and Stewart to defraud plaintiff was set up in her reply to defendant's answer. It tendered an immaterial and collateral issue, and I am unable to perceive how the denial of such allegations could, in any way, justify the introduction of testimony touching the same which was objected to by the defendant. In an equitable action against Robert and Andrew Merchant to compel a surrender and cancellation of the note and mortgage, such testimony would have been relevant and proper; and it may be that the facts and circumstances would have warranted the court, in that event, in granting the relief demanded. But in this action the sole question to be determined was whether or not the taking and selling of plaintiff's chattels by the defendant was wrongful, and not whether some other person or persons were guilty of perpetrating a fraud upon the plaintiff; and, in my judgment, the plaintiff should have been confined to the trial of the former question. For the foregoing and other reasons that might be given, I am of the opinion that the judgment of the court below should be reversed, and a new trial granted.

HOYT, J., concurs.